M. W. ELKINS & COMPANY *v.* ASHLEY.

4-4850

Opinion delivered January 10, 1938.

*John L. Carter,* for appellant.

*Ross Mathis,* for appellee.

GRIFFIN SMITH, C. J.  In an effort to refund a bonded indebtedness of $24,000, some of which was in default

both as to principal and interest, Hunter Special School District of Woodruff county entered into negotiations with M. W. Elkins Investment Company, and on September 2, 1933, an offer made by the Elkins Company was accepted. Directors of the school district at that time were J. I. Ashby, W. P. Dawson, W. J. Penrose, A. D. Froman, and S. W. Gray.

On September 26, 1933, T. W. Penrose as a taxpayer of the district filed suit in the Woodruff chancery court. In the complaint it was asked that the contract entered into between the school district and the Elkins Investment Company be declared void. Edgar Miller as county treasurer, the school directors, and M. W. Elkins Investment Company, were made defendants. In a proceeding before the county judge, in the absence of the chancellor and the circuit judge, the county treasurer was enjoined from paying two warrants for $600 each issued to the Elkins Investment Company by the school district.

Subsequent to issuance of the two warrants, M. W. Elkins Investment Company passed into receivership, and the warrants in question were purchased by M. W. Elkins & Company, a separate corporate entity. The latter, on February 15, 1935, filed an intervention in the Penrose suit, alleging ownership of the warrants, and that they were unpaid. It also alleged that on May 24, 1933, the Hunter School District entered into a contract with M. W. Elkins Investment Company to refund $24,000 of the district's outstanding bonds, the agreement being that M. W. Elkins Investment Company should be paid $1,200 for such service, and that the warrants were issued in pursuance of such contract. The intervener claimed that the warrants were purchased by it in good faith; and further that "It was the purpose of the intervener then, and it is ready and willing now, to carry out the conditions of the contract if permitted to do so." Judgment was prayed for the full amount of the warrants.

On March 26, 1935, J. I. Ashby, W. P. Dawson, A. D. Froman, and John Longrader, as taxpayers, filed an in-

tervention in the suits. They adopted the original complaint of T. W. Penrose, alleging, as a reason for the rvention, that Penrose had announced his intention withdraw from the litigation.

The injunction bond executed as a condition precedent to the order of the county judge restraining payment of the warrants was signed by T. W. Penrose, W. J. Penrose, and W. P. Dawson.

In the final decree handed down May 10, 1937, the chancellor ruled that the contract was an improvident one. It was ordered cancelled, as were also the two warrants.

Errors alleged as grounds for reversal are: (1) That the court erred in refusing to dismiss the intervention of J. I. Ashby, W. P. Dawson, and A. D. Froman, on motion, for the reason that they were parties defendants to the original action, and therefore improper parties plaintiffs. (2) That plaintiff Penrose's complaint was not verified, as required by § 1437 of Pope's Digest. (3) That since T. W. Penrose had withdrawn from the suit, there was no bond as required by § 7517 of Pope's Digest. (4) That the court erred in overruling appellant's objection to the introduction of unidentified letters and in permitting appellees to introduce hearsay evidence. (5) That the court erred in finding that the contract was an improvident one.

Failure of the court to dismiss as to Ashby, Dawson, and Froman, did not affect the status of the litigation. John Longrader, a citizen and taxpayer, was a party to the intervention, and his right to proceed with the suit is not to be questioned. Therefore, it is not necessary to pass upon the capacities of Ashby, Dawson, and Froman.

Although § 1437 of Pope's Digest requires that pleadings shall be verified, certain exceptions are made by § 1441 of the Digest, which reads in part as follows: "Verification shall not be required . . . to pleadings affecting injuries to person or character; nor to complaints founded on a note, bond, bill of exchange, mortgage or other written obligation of the defendant; nor

to defenses founded on the written obligation, release, or written acknowledgment of the plaintiff, unless the writing on which the action or defense is founded is lost, mutilated, or destroyed.''

Appellant's motion to dismiss for failure to verify was not filed until January 18, 1937. The depositions of Ross Mathis and W. P. Dawson, to be read in evidence on behalf of appellees, were filed September 14, 1936. The deposition of M. W. Elkins, a witness for appellant, was taken on notice dated March 24, 1936, and was filed January 11, 1937. All of the testimony on each side had been taken and the depositions filed before appellant's motion was made. If an oral motion were made prior to the time proof was taken, it is not shown by the bill of exceptions, and cannot be considered. It follows that, even if appellant's contention as to the effect of § 1437 could be maintained, the irregularity was waived by the proceedings taken.

■ The intervention of Ashby, Dawson, Froman, and Longrader includes a recitation that ''T. W. Penrose has announced that he will withdraw from said action.'' But the record does not disclose such withdrawal, and in the final decree Penrose is treated as the original plaintiff. The bond was not rendered ineffective by this mere declaration of intent made by others.

■ Inadmissible testimony appears in the record, but appellant suffered no prejudice thereby. There is sufficient admissible evidence to justify the decree.

■ We concur in the view expressed by the chancellor that the contract was an improvident one.

Sections 11500 to 11520 of Pope's Digest authorize, control, or affect, the issuance of school bonds, both original and refunding. Any district desiring to borrow money on its bonds must furnish the Commissioner of Education full information with respect thereto. Districts are prohibited from advertising an offer of bonds until the proposed issue has been approved in a writing bearing the seal of the State Board of Education. Such bonds shall be sold to the highest bidder at public sale. No bonds shall be sold for less than par on the basis of

bonds bearing interest at six per cent., but bonds bearing a lower rate of interest may be sold at a discount, and bonds may be sold with the privilege of conversion into bonds bearing a lower rate of interest, "but the terms of sale on any bonds sold at a discount shall be such that the district shall receive no less, and would pay no more, than substantially the same as par for bonds bearing interest at the rate of six per cent. per annum. The district shall pay the expenses of issuing the bonds and may supply the opinion of attorneys approving the validity of the bonds. No brokerage, agent's fee or commission of any kind for securing bids for the sale of school district bonds shall be allowed or paid on any bond sale, unless the same is approved by the Commissioner of Education, and any person giving or receiving such shall be guilty of a misdemeanor."

By § 11503 of Pope's Digest it is provided that all school bonds shall be sold for cash on the delivery of the bonds. Delivery of the bonds to the purchaser, and payment of the full amount, shall be simultaneous acts, "and in order to do this some reputable bank or trust company may be designated as escrow agent through which the bonds may be delivered and the funds received."

In the instant case the record discloses that on May 24, 1933, M. W. Elkins Investment Company received an offer from the board of directors of Hunter School District [hereafter referred to as the District], in which the District proposed to pay appellant's predecessor $1,200 if it would "prepare the necessary papers for refunding $24,000 of 6 and 5 per cent. bonds, maturing from 1932 to 1948, . . . said amount payable when the refunding bonds have been approved and lodged with the trustee for exchange, as follows: August 1, 1933, $600; August 1, 1934, $600." Other conditions of the proposal were: "The $24,000 of refunding bonds are to bear interest at the rate of 3 per cent. for the years 1933, 1934, and 1935; 4 per cent. for the years 1936 and 1937, and 5 per cent. for the remaining life of the issue, interest payable semi-annually and maturing serially

from 1938 to 1952, both inclusive. You [M. W. Elkins Investment Company] agree to pay the attorney's fee for approving the bonds and printing and trusteeing same, you to name the trustee and the attorney approving the bonds. You also agree, beginning one year from the maturity date of bonds to be refunded, to ratio and pay to the District that proportion of the net fee that the amount of bonds unredeemed for that year bears to the total amount of bonds to be refunded. In computing the payments due the District, all expenses incurred by you, including the attorney's fee, printing and trusteeing the bonds, are to be deducted from the amount of fee to be paid you. We also agree that one of the considerations received by you in this contract is the firm agreement by the District to pay promptly on the due dates the interest on both the refunding bonds and the other outstanding bonds of the District which are not to be refunded.''

This proposal from the District to M. W. Elkins Investment Company was submitted to the State Board of Education, and on July 14, 1933, the Board, by resolution, directed the Commissioner to withhold approval "until there shall have been filed with the Commissioner a written request from the District for approval of the bond issue." Terms of the refunding issue, of which approval was sought, were set out. These were identical with proposals made by the District to the Investment Company. On August 8, 1933, the Commissioner's approval was given, but nowhere in the record does it appear that the State Board of Education, or the Commissioner, expressly approved payment of $1,200 or any other amount, and unless it be inferred that approval of the fee was an incident to approval of the bond issue, then there was no such approval.

The exhibits introduced into the record show that approval given by the State Board of Education did not run in favor of appellant's predecessor, nor does it appear that M. W. Elkins Investment Company was a party under consideration. Neither the District nor the State Board of Education nor the Commissioner of Edu-

cation had a right, on July 14, 1933, to approve a sale of bonds to M. W. Elkins Investment Company, and the approval which was given could not inure to the latter. Act 169 of 1933 provides the only method by which a sale may be consummated, and any method materially varying from statutory provisions would render the transaction invalid. The most the Investment Company could have done at that time would have been to agree to make a bid as set out in the letter from the District, and to offer such bid for consideration in competition with others at the proper time and place.

In the District's letter of May 24 the subject-matter is addressed to M. W. Elkins Investment Company as agent, and the proposal to pay a fee is in contemplation of services to be rendered in "preparing the necessary papers . . . [and] . . . refunding the bonds." If the proposal had ended there, the fee, if approved by the Commissioner, would have been payable when such services had been rendered. In the fourth paragraph, however, appears language requiring the Investment Company to ratio and pay back to the District "that proportion of the net fee that the amount of bonds unredeemed for that year bears to the total amount of bonds to be refunded."

In this paragraph the compensation is referred to as a "fee," there being an obvious intent that the services to be rendered were efforts of the Investment Company in procuring a purchaser for the bonds. Also, there was to be reimbursement to cover necessary expenses of preparing papers, trusteeing the securities, and compensating an examining attorney.

If these services had been rendered—that is, if the Investment Company as agent of the District had handled the negotiations to a conclusion—then, under the law, the District was authorized to reasonably compensate it for such services. But this is not the relationship. Effect of the letter of May 24 was an offer by the District to dispose of $24,000 of its bonds at an undetermined figure, the proposal being that "the bonds are to bear interest at the rate of 3 per cent. for the

years 1933, 1934, and 1935; 4 per cent. for the years 1936 and 1937, and 5 per cent. for the remaining life of the issue.'' The Investment Company, in its purported acceptance, and as a condition upon which payment of its fee was predicated, did not bind itself to make a bid to this effect—nor could such a bid have been accepted at that time. An agreement to this effect would have been inconsistent with the Investment Company's status as an agent of the District; nor would this position have been harmonious with the plan to annually ratio back to the District the unearned proportion of the fee. For the purpose of earning the fee, the Investment Company took on the attributes of an agent; for the purpose of composing its demand for present payment with a possible failure to refund all of the bonds, it resorted to a promise of refunds.

Proceedings had by the board of directors of the District September 2 show that M. W. Elkins Investment Company, as such, and not as agent, purchased the bonds. The bid, signed by the Investment Company, recites that ''We will pay you par and accrued interest by the surrender of the bond issue dated [blank] and maturing from 1932 to 1948, and bearing interest at the rate of 6 per cent. and 5 per cent. per annum.''

Under the law the Investment Company had the right, within certain limitations, to bid less than par on bonds bearing interest at less than 6 per cent., but it did not have the right to bid par, or any other amount, and then charge a commission for making the bid. It could not be paid for employing itself as an agent of itself to make its own bid.

There was no assurance, other than the naked promise of M. W. Elkins Investment Company, that in the event of a failure to refund all the bonds the District could ever realize on the ''ratioed refund'' promise. Developments proved the promise to have become unenforcible, for the promisor went into receivership and the receiver sold the two warrants to appellant. Appellant, in effect, now offers to substitute its promise for that of its predecessor, and asks the assistance of equity to com-

pel the District to again speculate on the future and uncertainty.

The chancellor was entirely correct in holding that the contract was invalid, and the decree is in all respects affirmed.