CANYON LAKE BANK, Appellant,

v.

NEW BRAUNFELS UTILITIES,
Appellee.

No. 13456.

Court of Appeals of Texas,
Austin.

Aug. 4, 1982.
Rehearing Denied Sept. 22, 1982.

Robert J. Hearon, Jr., David Cohen, Graves, Dougherty, Hearon & Moody, Austin, Edwin K. Nolan, Canyon Lake, for appellant.

Thomas N. Bluntzer, Bartram, Reagan, Burrus & Dierksen, New Braunfels, for appellee.

PHILLIPS, Chief Justice.

This is an appeal from the district court's grant of appellee's motion for summary judgment. Appellee, New Braunfels Utilities, filed suit on July 15, 1980 against Richard Sledge for conversion of its funds to his own use and against Canyon Lake Bank for breach of its depository contract with appellee. The Bank is alleged to have misapplied trust funds held for the utility to the personal debts and obligations of Sledge at the Bank. A default judgment was taken against Sledge and, as he failed to perfect an appeal, the efficacy of that judgment is not before the Court. Both Canyon Lake Bank and New Braunfels Utilities filed motions for summary judgment. Following hearing, appellee's motion for summary judgment was granted and appellant's motion was denied. From the order granting summary judgment, appellant has perfected its appeal.

The circumstances properly present cause for return of a deposit and the nature of the case is not a suit against a holder in due course as is urged by appellant. However, the interest rate is improperly calculated, so this Court will modify the judgment rendered in favor of New Braunfels Utilities and as modified, it is affirmed.

Richard Sledge, while in the employ of appellee New Braunfels Utilities, induced the municipally-owned utility to issue a check drawn on its account in the amount of $23,000.00 to the order of appellant Canyon Lake Bank. Informing his superiors that the check represented the amount by which a developer, for whose account Sledge was responsible, had overpaid for line extension, Sledge obtained permission to deposit the funds at Canyon Lake Bank pending ultimate disposition of the matter. On July 19, 1976, Sledge presented the check to the Bank, where he was known to be appellee's general manager, and was immediately issued a certificate of deposit in the name of Richard Sledge, Trustee, for the principal sum of $23,000.00. Upon maturity of the certificate of deposit, Sledge withdrew $5,000.00 of the fund to open a personal checking account with the Bank and deposited the remainder in a new certificate of deposit, also made payable to Sledge in his capacity as trustee.

Thereafter, until the fund was exhausted, as each succeeding certificate became due, Sledge repeated the practice of siphoning off a portion of the money for deposit in his personal account and purchasing, as trustee, a new certificate of deposit with the residue. Additionally, when each of the certificates of deposit was surrendered for payment, Sledge would apply some of the money received to pay directly on personal debts and obligations he owed the Bank.

At one point, the appellant's president, and Sledge's personal banker, questioned him about the nature of the trust. According to the president's deposition testimony, Sledge replied that he and another man had formed a utility sub-contracting business and the money represented partnership property. The bank president assumed Sledge to be serving as trustee of his partner's interest.

In its suit, appellee alleged the Bank, with full knowledge of Sledge's fiduciary position with reference to the money, permitted and aided Sledge in wrongfully converting the funds to his own use and benefit, in using the amount as collateral on his personal loans to the Bank, and in paying off his personal indebtedness to the Bank. Appellee prayed for return of the $23,000.00 deposit together with the interest earned and attorneys' fees. Appellant answered by general denial and an affirmative de-

fense of limitations. Claiming the utility's suit was in essence a demand against a holder in due course of the original check issued by the utility, the Bank pleaded that payment of the check was final under Tex. Bus. & Comm.Code Ann. § 3.418 (1968) and that the two-year statute of limitations of Tex.Rev.Civ.Stat.Ann. art. 5526 (1981) barred suit. The Bank moved for summary judgment. In appellee's response to the Bank's motion, the utility refuted the affirmative defense of limitations, stating as this constituted a suit for return of a deposit, the four-year statute of limitations of Tex.Rev.Civ.Stat.Ann. arts. 342–701 (1975) and 5527 (1981) should be applied. Citing the authority of *United States Fidelity & Guaranty Co. v. Adoue & Lobit,* 104 Tex. 379, 137 S.W. 648, *aff'd on reh.,* 104 Tex. 379, 138 S.W. 383 (1911), appellee called attention to the undisputed facts here: 1) the $23,000.00 check deposited with appellant showed on its face the source and ownership of the funds; 2) Sledge was known by the Bank to occupy a fiduciary relationship to appellee; 3) appellant issued a certificate of deposit to Sledge in a fiduciary capacity; and 4) appellant aided in Sledge's conversion of the money by taking a security interest in the deposit to secure payment of Sledge's personal indebtedness to the Bank and by receiving portions of the funds in payment of Sledge's personal obligations to the Bank. Attached to the response was the sworn affidavit of Richard Sledge. In appellee's own motion for summary judgment, these facts were reiterated, and, in addition, interest at the rate of 9% per annum from the date of deposit was prayed

for. The district court rendered judgment, after hearing, in favor of appellee in all things.

■ Under first point of error, the Bank claims holder in due course status as defined in Tex.Bus. & Comm.Code Ann. § 3.302 (1968).[1] The Bank alleges it was without notice Sledge was acting in violation of his fiduciary capacity and refers the Court to § 3.304(d)(5) of the Business and Commerce Code.[2] As a holder in due course of a negotiable instrument, appellant seeks to avail itself of the protection afforded by Tex.Bus. & Comm.Code Ann. § 3.419(c).[3]

■ The flaw in appellant's position is that the $23,000.00 was deposited with the Bank pursuant to appellee's instructions, albeit in conjunction with Sledge's ultimate intent to defraud. The certificate of deposit was demarcated payable to "Richard Sledge, Trustee," and such he was in relation to the funds. The certificate represented utility property and it was not until Sledge openly diverted the proceeds of the certificate to payment of his own debts to the Bank that the conversion occurred. As a depositor at Canyon Lake Bank, appellee had the right to demand an accounting. *See L. G. Balfour Co. v. State Trust & Savings Bank,* 120 S.W.2d 477 (Tex.Civ. App.—Waco 1938, no writ); *Austin v. Lacy,* 2 S.W.2d 876 (Tex.Civ.App.—Texarkana 1928, writ ref'd).

Although appellant's Code sections and case authority are misplaced, owing to the fact we are concerned with a deposit under article 4 and not an article 3 negotiable

1. Section 3.302 provides, in relevant part:
   (a) A holder in due course is a holder who takes the instrument
   (1) for value; and
   (2) in good faith; and
   (3) *without notice* that it is overdue or has been dishonored or *of any defense against or claim to it on the part of any person.*
   (b) A payee may be a holder in due course.
   (emphasis added)

2. Section 3.304(d) and subsection (5) state:
   (d) Knowledge of the following facts does not *of itself* give the purchaser notice of a defense or claim:
   *       *       *       *       *       *

   (5) that any person negotiating the instrument is or was a fiduciary.
   (emphasis added)

3. Section 3.419(c) states:
   Subject to the provisions of this title concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

instrument, at least one section of article 3 is worthy of note here. Sledge presented appellee's check to the Bank some three months before he began using the funds for his own use and "notice" is not retroactive. Nevertheless, section 3.304(b) is of interest in the context of article 4 liability. The section holds, "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty."

■ Despite the fact the issue of return of an *instrument* versus return of a *deposit* is ably argued by appellant, its position is contrary to the Texas Business and Commerce Code and some seventy years of pre-Code case law.[4] The pre-Code case of *United States Fidelity & Guaranty Co. v. Adoue & Lobit,* 104 Tex. 379, 137 S.W. 648, *aff'd on reh.,* 104 Tex. 379, 138 S.W. 383 (1911) outlines the responsibility of a bank when a fiduciary misappropriates a certificate of deposit. The very denomination of a certificate of deposit to an individual in a fiduciary capacity is notice that it is trust property and the bank is liable if it permits a fiduciary to apply the trust fund to the payment of the trustee's personal debts or permits its diversion to the personal use of such trustee. Relying on settled law in England and in the United States, the Court in *Adoue & Lobit* held it to be generally immaterial, so far as reflected upon the duty of the bank to its depositor, in what capacity the depositor held or possessed his deposit. If the fund were deposited by one as trustee, the trustee would have the unfettered right to withdraw the sum, and absent knowledge of the trustee's misconduct, the bank would be obliged to assume the trustee had appropriated the money for trust purposes. Indeed, the Court pointed out that any other rule would create chaos as it would put the bank on inquiry of every withdrawal made from a fund deposited by a trustee or like fiduciary. In the absence of notice then, the bank cannot question the right of a customer to withdraw trust funds, even though the deposit may be to the customer's own credit. However, "if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, *or if it participates in the profits or fruits of the fraud,* then it will be undoubtedly liable." *Id.* 137 S.W. at 653 (emphasis added).

Appellant argues the adoption by Texas, in 1965, of its first version of the Uniform Commercial Code superseded the *Adoue & Lobit* case as the two were in conflict. This assertion disregards the panoply of cases, throughout the country, authoritatively citing *Adoue & Lobit,* by name or by holding, in the years since their respective espousal of the Uniform Commercial Code.[5] Moreover, the federal fifth circuit, applying Texas law in the diversity case of *South Central Livestock Dealers v. Security State Bank,* 551 F.2d 1346, 1349 (5th Cir. 1977), *modified as to other grounds and aff'd on reh.,* 614 F.2d 1056 (5th Cir. 1980) spoke directly to the *Adoue & Lobit* issue stating, "Texas has long held that if a bank knows that deposits by a debtor in his own name are in fact held by him in a fiduciary capacity, then the bank may not apply such funds to the individual indebtedness of the debtor." [citing *Steere v. Stockyards National Bank,* 113 Tex. 387, 256 S.W. 586 (1923) and *National Indemnity Co. v. Spring Branch State Bank,* 162 Tex. 521, 348 S.W.2d 528 (1961)]. In the *Security State Bank* case, appellees tendered the identical premise that is presently before us, namely the invalidity of the *Adoue & Lobit* decision in light of the Uniform Commercial Code. The fifth circuit responded by re-affirming the pre-Code cases ruling:

4. *Grigsby v. First National Bank,* 136 Tex. 54, 144 S.W.2d 244 (1941); *Wichita Royalty Co. v. City National Bank,* 127 Tex. 158, 89 S.W.2d 394 (1935); *Interstate National Bank v. Claxton,* 97 Tex. 569, 80 S.W. 604 (1904); *Commercial State Bank v. Algeo,* 331 S.W.2d 84 (Tex. Civ.App.—Eastland 1959, writ dism'd); *Gra-* *ham National Bank v. Frogge,* 150 S.W.2d 429 (Tex.Civ.App.—Fort Worth 1941, no writ).

5. One of the most recent examples is the case of *First National Bank v. Nash,* 2 Ark.App. 135, 617 S.W.2d 24 (1981).

Security State argues, however that Texas' adoption of the Negotiable Instruments Law (NIL) in 1919, *see generally,* Tex.Rev.Civ.Stat.Ann. arts. 5932–48 (1962), and its adoption of the Uniform Commercial Code in 1965, *see generally,* Tex.Bus. & Comm.Code (Tex. UCC 1968), have nullified this line of Texas cases. We are not persuaded. It is true that *Steere v. Stockyards National Bank, supra,* was based on events transpiring in 1917 and 1918, prior to Texas' adoption of the NIL in 1919. Yet the rule of law in *Steere* was cited with approval in *National Indemnity Co. v. Spring Branch State Bank, supra,* 348 S.W.2d at 529, *after* Texas' adoption of the NIL. Further, language in cases from the Texas intermediate appellate courts suggests that the *Steere* rule, reiterated in *National Indemnity,* is still good law after passage of the UCC, at least where not explicitly displaced by the UCC. In *First National Bank v. Lone Star Life Insurance Co.,* 524 S.W.2d 525 (Tex.Civ.App., Dallas 1975, no writ), the Dallas Court of Civil Appeals observed that:

> [T]he rule in *National Indemnity* is still the law in Texas except for cases like the present [procedures for creating a

security interest in a certificate of deposit], in which it has been displaced by the Code. Tex.Bus. & Comm.Code Ann. § 1.103 (Tex. UCC 1968).

524 S.W.2d at 529. *See also Christian v. First National Bank,* 531 S.W.2d 832, 839–40 (Tex.Civ.App., Ft. Worth 1975, writ ref'd n. r. e.) (citing *National Indemnity*). The Texas UCC itself states that: "Unless displaced by the particular provisions of this title," prevailing Texas law still governs. Tex.Bus. & Comm.Code Ann. § 1.103 (Tex. UCC 1968). We conclude that in such a case as ours, the Texas Supreme Court would adhere to the *National Indemnity* rule.

*Id.* at 1349–50 (emphasis in original).

■ Furthermore, the *Security State Bank* opinion was itself cited as authoritative on the subject by the Houston Court of Civil Appeals in *Pan American National Bank v. Holiday Wines & Spirits, Inc.,* 580 S.W.2d 7 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.). This Court rules that the law as pronounced in the case of *Adoue & Lobit* concerning bank liability on fiduciary misappropriation of certificates of deposits still governs in Texas.[6]

---

6. In passing, we note that twenty-four states and one territory have adopted versions of the Uniform Fiduciary Act in addition to, or, in the case of Louisiana, in substitution for, the Uniform Commercial Code to deal with just the issues before the Court. Business & Financial Laws, 7A U.L.A. 127 (1978). Section 7 of the Act states:

> If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.

The numerous decisions interpreting this section have uniformly held that when a bank has knowledge that funds are trust funds, or has knowledge of sufficient facts to charge it with notice, the bank may not accept the funds in payment of or as security for a personal debt of the fiduciary without incurring liability. *Guild v. First National Bank,* 92 Nev. 478, 553 P.2d 955 (1976); *Schneider Fuel & Supply Co. v. West Allis State Bank,* 70 Wis.2d 1041, 236 N.W.2d 266 (1975); *and Guaranty Bank & Trust Co. v. C. & R. Development Co.,* 260 La. 1176, 258 So.2d 543 (1972).

Although the aforegoing cases are only of interest, not of authority in Texas, it is extremely significant that in Illinois, where both the Uniform Commercial Code and the Uniform Fiduciary Act are codified, the courts have interpreted the Uniform Commercial Code as providing for the *identical result* reached in the cases decided under the Uniform Fiduciary Act. *See Maley v. East Side Bank,* 361 F.2d 393, 401 (7th Cir. 1966), wherein the Court held:

> Therefore, when the defendant bank agreed to accept the checks payable to National Lumber and to pay over the proceeds thereof to Schulman in cash and by crediting his personal account it did so in knowing violation [of his breach of fiduciary duty]. To this

■ Having concluded the trial court correctly interpreted suit to be for the breach of a depository contract, it necessarily follows the four-year statute of limitations of Tex.Rev.Civ.Stat.Ann. arts. 342–701 (1973) and 5527 (1981) applies. Where a deposit of money is made, the statute of limitations is four years and does not begin to run against the depositor until demand is made and refused or an adverse claim is asserted. *Hinds v. Southwestern Savings Association,* 562 S.W.2d 4 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.).

■ We next turn our attention to the question of notice of the identity of the fiduciary's trustor. Appellant alleges there was a genuine issue of material fact whether Sledge was acting as appellee's trustee or that appellant knew appellee was the unnamed trustor on Sledge's trust deposit. Neither contention is material. The key is that the Bank was on notice the funds were held in trust and that Sledge occupied a fiduciary relationship to those funds. The summary judgment proof clearly indicated appellant's president was aware Sledge was appellee's general manager and that the original deposit check had been drawn on appellee's account. Whether Sledge was thought to be appellee's or his alleged business partner's trustee is beside the point. The rule is if a bank accepts payment of trust funds from a trustee to be applied on the personal obligation of the trustee, the bank is liable. *See South Central Livestock Dealers v. Security State Bank, supra.*

The sole remaining point of error concerns the propriety of an award of prejudgment interest at the rate of 9% per annum from the date of original deposit. Appellant failed to raise objection to the interest rate by written response to appellee's motion for summary judgment. However, on appeal, appellant contends that the grounds for the award presented to the trial court by appellee were insufficient as a matter of law. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

■ From July 19, 1976, the date of the original deposit, to October 19, 1976, the date of breach by the bank, i.e., the day Sledge's sworn affidavit reveals the first withdrawal to make bank loan payments was had, the contracted-for rate of 5½% interest stated in the original certificate, is controlling. Thereafter, the appellees are entitled to the prayed-for rate of 9% per annum. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (1981).

The modification is mandated by the facts revealed in appellee's own motion for summary judgment. New Braunfels Utilities' $23,000.00 was deposited at Canyon Lake Bank pursuant to the instructions of the utility. A contractual relationship between the Bank and the utility was simultaneously created. No cause of action ripened until the Bank breached its contract through acceptance of the fiduciarily-held funds in payment of Sledge's personal loans. *See generally Houston National Bank v. Biber,* 613 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n. r. e.).

The summary judgment is here modified to provide that appellee recover the sum of $23,000.00, together with contractual interest thereon, that being $321.07, and prejudgment interest at the rate of 9% simple on the combined total from October 19, 1976 to final judgment on January 7, 1981, that sum being $10,235.73. From January 7, 1981, 9% simple annual post-judgment interest is hereby awarded based on the sum of $33,556.80, which represents the principal deposited, the contractual interest due, and pre-judgment interest from the date of breach of the depository contract to the date of judgment. *See City of Austin v. Foster,* 623 S.W.2d 672 (Tex.Civ.App.—Aus-

extent, the bank took the checks not as a holder in due course, Uniform Commercial Code, 26 Ill.Rev.Stat. §§ 3–302(1)(c), 3-304(2) (1963), and was therefore subject to the claim of National Lumber Company, Uniform Commercial Code, 26 Ill.Rev.Stat. § 3

306(a) (1963). [Footnote to U.C.C. deleted]. The claim of National Lumber is, of course, that the bank, by its unauthorized violation of the express contract with its depositor, National Lumber, dealt with Schulman in such manner at its peril . . . .

tin 1981, writ ref'd n. r. e.). As modified, the summary judgment is affirmed.