**UPPER VALLEY AVIATION, INC., Appellant,**

v.

**MERCANTILE NATIONAL BANK, et al, Appellees.**

**No. 05–82–00748–CV.**

Court of Appeals of Texas, Dallas.

Aug. 11, 1983.

Rehearing Denied Sept. 12, 1983.

Daniel R. Rutherford, San Antonio, for appellant.

W. Mike Baggett, Jeffrey Joyce, Winstead, McGuire, Sechrest & Minick, Dallas, for appellees.

Before STOREY, WHITHAM and ROWE, JJ.

STOREY, Justice.

Upper Valley Aviation, Inc. sued Mercantile National Bank to recover a deposit of funds which Mercantile had initially transferred from the account of Upper Valley to that of a third party, McAllen Piper, Inc., and then later offset to pay the third party's debt to Mercantile. Upper Valley appeals from a summary judgment granted Mercantile. The appeal presents two questions: (1) whether Upper Valley's suit was barred by limitation and (2) whether an agent's transfer of his principal's deposits was within the scope of the agent's authority. We hold that the two-year statute of limitations is not applicable to suits to recover a deposit of funds, and, therefore, Upper Valley's suit was not barred. We hold further that the agent's authority to transfer funds of his principal was not established as a matter of law. Consequently, we reverse and remand.

The facts related to the limitation question are undisputed. On April 16, 1976, J.L. Reasonover, the general manager of Upper Valley, presented two checks to Mercantile, both drawn on the account of Upper Valley and payable to the order of Mercantile. Each check was signed by Reasonover and by John W. Arndt, Upper Valley's president and sole shareholder. One check served to establish a $20,000 savings account and one served to purchase a $20,000 certificate of deposit, both in the name of Upper Valley.

On January 19, 1977, Mercantile, on order of Reasonover, transferred the savings account funds to a savings account in the name of McAllen Piper, Inc., a corporation controlled wholly by Reasonover, and reissued the certificate of deposit in the name of McAllen Piper, Inc. On July 1, 1977 Mercantile offset both accounts and applied the proceeds to a debt owed Mercantile by McAllen Piper, Inc. This suit was filed by Upper Valley on March 3, 1979.

Upper Valley, in its suit, sought to recover its deposits on alternative theories of conversion or breach of unspecified code provisions. Mercantile moved for summary judgment claiming that the action was barred by the two-year statute of limitations dating from the time it transferred the funds—January 19, 1977. Upper Valley responded claiming that the conversion did not occur until Mercantile appropriated the money to its own use by asserting a right of offset on July 1, 1977.

Initially conceding that the two-year statute of limitations applies to a suit for conversion, Upper Valley contended that summary judgment on the limitations ground was improper because the "ultimate" act of conversion did not occur until Mercantile asserted a right to offset its claim on McAllen Piper's debt on July 1, 1977. Mercantile, on the other hand, maintains that the transfer of the funds from one depositor to

another was the act that triggered the statute of limitations. We disagree with both contentions.

■ Upper Valley could not concede a legal conclusion that is contrary to the unanimous authority, as will be seen in the discussion that follows. The four-year statute of limitations was not argued before the trial judge at summary judgment, but the bank had the burden to establish as a matter of law that the claim as pleaded was within the two-year statute, and the four-year statute is relevant insofar as it limits application of the two-year statute. *See Sherman v. Davis,* 583 S.W.2d 922, 924–25 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.); *cf. Delgado v. Burns,* 656 S.W.2d 428 (1983). Here, it is clear from the facts alleged in the petition that a debtor-creditor relationship existed and, therefore, that it stated a cause of action for breach of a depository contract, to which the two-year statute does not apply.

■ Upper Valley recognized the error of law in its original concession and consequently, in a supplemental letter brief and at oral argument, cited *Canyon Lake Bank v. New Braunfels Utilities,* 638 S.W.2d 944 (Tex.App.—Austin 1982, no writ), for the proposition that "[w]here a deposit of money is made, the statute of limitations is four years and does not begin to run against the depositor until demand is made and refused or an adverse claim is asserted." *Id.* at 949. By relying upon *Canyon Lake,* Upper Valley adopts a position which is contrary to its original concession, namely, that the two-year statute applies. However, we conclude that it adopts a position which is binding as the applicable law in a suit against a bank to recover a deposit. We are not prevented by summary judgment rules from using the governing law to reverse a case on an the issue presented to the trial court merely because the judge and the parties ignored this controlling law.

■ An action in conversion will lie for the recovery of money only if the money can be identified as a specific chattel. However, when an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate to enforce the debt. A bank deposit ordinarily creates a debtor/creditor relationship and the bank's duty to disburse the funds according to the depositor's instructions arises from the depository contract. Therefore, a depositor may not sue in conversion to recover his deposit, but instead he must sue for breach of the depository contract, an action which is based on debt. *See generally Canyon Lake Bank,* 638 S.W.2d at 949; *First National Bank of Bellaire v. Hubbs,* 566 S.W.2d 375, 377 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). *See also Collin County Savings & Loan v. Miller Lumber Co.,* 653 S.W.2d 114 (Tex.App.—Dallas 1983); *Williams v. Stansbury,* 634 S.W.2d 924, 928 (Tex.App.—El Paso 1982, no writ); *Crenshaw v. Swenson,* 611 S.W.2d 886, 891 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *Graham v. Turner,* 472 S.W.2d 831, 839 (Tex.Civ.App.—Waco 1971, no writ); *Hull v. Freedman,* 383 S.W.2d 236, 238 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.); *Story v. Palmer,* 284 S.W. 331 (Tex.Civ.App.—El Paso 1926, no writ); *accord, Great Commonwealth Life Ins. Co. v. Banco Obrero de Ahorro y Prestamos,* 535 F.2d 331, 331 (5th Cir.1976); *cf. Houston National Bank v. Biber,* 613 S.W.2d 771, 775 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (conversion of proceeds of checks from investors made payable to as yet nonexistent partnership; held, bank converted proceeds of checks by applying the checks to the loan on the project).

■ An action to recover a deposit wrongfully withheld or offset by a bank is governed by the four-year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 342–701 (Vernon 1973), art. 5527 (Vernon Supp. 1982–83). *See Canyon Lake,* 638 S.W.2d at 949. Therefore, Mercantile did not conclusively establish that Upper Valley's claim for its deposit was barred by limitations because as a matter of law its claim could

not have been cut off by the two-year statute of limitations.

Next, Upper Valley claims that the trial court erred in granting summary judgment because the summary judgment evidence did not conclusively establish that there is no fact issue as to whether Reasonover had actual authority to transfer the $40,000 in deposits from Upper Valley to McAllen Piper. If Reasonover had authority, Mercantile could not be held liable for breach of the depository contract. As establishing Reasonover's authority, Mercantile relied at summary judgment upon: (1) Reasonover's status as general manager with the duties specified in the management contract (citing *Helms v. Home owners' Loan Corp,* 129 Tex. 121, 103 S.W.2d 128 (1937)); (2) Statements in its own loan officer's deposition showing a course of buying, selling, and financing airplanes for Upper Valley's charter/rental business; (3) Admissions in Arndt's deposition that Reasonover had authority to handle the $40,000 deposit. We conclude that the summary judgment evidence did not conclusively establish that Reasonover had actual, implied, or apparent authority to transfer Upper Valley's funds to his own company's name. At least, the evidence is inconclusive on this point and presents a fact issue upon which Upper Valley is entitled to go to trial.

Reasonover's dealings with Mercantile were through its loan officer, Foley, whose deposition is a part of the summary judgment evidence. According to Foley, Reasonover represented that he had an offer to become Upper Valley's general manager and an option to purchase its assets. However, Foley never saw the executed contract or any other document showing Reasonover's position with Upper Valley. At a later date, Reasonover also represented that he had exercised the option and purchased Upper Valley's assets, but Foley never saw the documents evidencing the purchase. Before transferring the funds, Foley required the execution of a corporate resolution on a bank form authorizing Reasonover to handle transactions with the bank and withdraw money from accounts without necessity of inquiry by the bank. This resolution was signed by Reasonover as secretary of Upper Valley and his wife as vice-president. Neither Reasonover nor his wife served as corporate officer of Upper Valley. Arndt testified by deposition that Foley admitted to him by telephone that he knew the resolution to be a bogus one. Additionally, when Reasonover ordered the transfer of funds, Foley requested a letter authorizing the transaction. Reasonover agreed but failed to furnish the evidence of authority. Nevertheless, Foley approved the transfer relying upon Reasonover's promise to promptly provide the letter of authorization. These facts reveal that Foley was not sure of the scope of Reasonover's authority to act on behalf of Upper Valley; that he attempted to investigate but, as he admitted, abandoned his efforts to investigate.

■ There are certain powers which no agent of a corporation, even a general manager, may exercise in the corporation's name unless explicitly authorized. These instances usually involve an agent's action for his own benefit. For example, an agent has no authority to apply payments from his principal's debtor to his own indebtedness. *See Citizen's Cotton Oil Co. v. Elliott,* 294 S.W. 654 (Tex.Civ.App.—Dallas 1927, no writ); *Trippett v. Nash McLarty Motor Co.,* 269 S.W. 205 (Tex.Civ.App.—Waco 1925, no writ) (general managers,); *Chattanooga Foundry & Pipe Works v. Gorman,* 12 Tex. Civ.App. 75, 34 S.W. 308 (1895, no writ). The self-dealing here is quite analogous. Viewed in the light most favorable to the non-movant, Upper Valley, the summary judgment evidence reflects that Reasonover transferred Upper Valley's funds to McAllen Piper to secure the indebtedness on McAllen Piper's airplanes which Reasonover had transferred from Upper Valley to McAllen Piper for no consideration and without authority. It cannot be rationally contended that Reasonover as general manager had implied authority to perform this

transaction for his own benefit. The transfer of corporate assets to general managers without consideration is not a transaction which is performed within the usual course of a business that rents charter planes. *Cf. Sugatex Corp. v. Clift,* 225 S.W.2d 451, 453 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.) (general manager lacked authority to consent to corporation's tenant's retention of improvements on leasehold).

Mercantile relies on *Helms,* 103 S.W.2d at 134, for the broad authority it contends Reasonover possessed as general manager. "A general manager may do everything in the transaction of the business of the corporation that the corporation could itself do in its routine and daily business." *Id.; accord, W.B. Dunavant & Co. v. Southmost Growers, Inc.,* 561 S.W.2d 578, 582 (Tex.Civ.App. —Corpus Christi 1978, writ ref'd n.r.e.). These cases are distinguishable, however, because the general managers' actions in each case were within their actual or implied authority. In *Helms,* a corporate resolution expressly authorized the regional managers to appoint substitute trustees. *See* 103 S.W.2d at 134. In *Dunavant,* the general manager had authority to negotiate contracts of sale of cotton for the corporation and the agent's action was within the implied scope of that authority. *See* 561 S.W.2d at 582.

██ Under the doctrine of apparent authority, a principal is estopped to deny the authority of an agent when the conduct of the principal would lead a reasonably prudent person to believe that the agent has the authority he purported to exercise. *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981); *Southwest Title Ins. Co. v. Northland Building Corp.,* 552 S.W.2d 425, 428 (Tex.1977). The isolated acts or words of the agent cannot supply the basis for this apparent authority. *See Southline Equipment Co. v. National Marine Service Inc.,* 598 S.W.2d 340, 343 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ); *Bugh v. Word,* 424 S.W.2d 274, 277 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.

e.); *Bolin v. Pacific Finance Corp.,* 278 S.W.2d 879 (Tex.Civ.App.—Amarillo 1954, no writ). However, a corporation can only act through its agents; therefore, the authorized acts or words of an agent, other than the agent claiming the benefit of apparent authority, must be considered. *Cf. Dunavant,* 561 S.W.2d at 582–83 (agent/general manager not acting for his own benefit or fraudulently).

In the instant case, the authority that the agent purported to exercise was the transfer of funds from his principal to a third party corporation in which the agent had an interest. It is disputed on the scant evidence in the record whether Foley knew that Reasonover was acting for his own benefit at the expense of his principal, Upper Valley. Additionally, Foley disclosed a fact issue whether he relied on any conduct that could establish apparent authority when Foley requested a letter of actual authorization for this transaction from Reasonover. *See Rourke v. Garza,* 530 S.W.2d 794, 804 (Tex.1975) (Apparent authority requires reliance on principal's conduct or words); *Bluebonnet Oil & Gas Co. v. Panuco Oil Leases,* 323 S.W.2d 334, 338 (Tex.Civ. App.—San Antonio 1959, writ ref'd n.r.e.).

The only actions of the principal upon which Mercantile relies are Arndt's statements and conduct. We conclude that this conduct was not such as would reasonably justify Foley to believe that Reasonover could handle these funds as he wished. The checks used to deposit the funds were signed by both Arndt and Reasonover, which fact should have put Foley on inquiry as to Reasonover's authority to withdraw the funds solely on his own authority. In fact, Foley did make an unsuccessful inquiry. *Bolin,* 278 S.W.2d at 884; *see Boucher v. City Paint & Supply Co.,* 398 S.W.2d 352, 356 (Tex.Civ.App.—Tyler 1966, no writ).

The statements of Foley concerning a past course of conduct cannot establish apparent authority because Arndt controverted that evidence by denying that Reason-

over had authority to transfer or withdraw the funds or transfer the planes and there is no evidence that Upper Valley acquiesced in any past course of conduct that might circumstantially show that Upper Valley was holding out Reasonover as having that authority. *See Bluebonnet,* 323 S.W.2d at 338. *Further,* Foley's statements were general and vague and did not establish any specific purchases or sales of planes in the past. As such, this evidence is not conclusive at summary judgment. *See Broussard v. Moon,* 431 S.W.2d 534, 537 (Tex.1968).

 In conclusion, we have held that the summary judgment on limitations grounds was improper as a matter of law and that the summary judgment evidence does not conclusively establish that Reasonover had authority to transfer these funds for the purpose which he did.

Accordingly, we reverse and remand.