**REGENCY FINANCIAL CORPORATION and Westlake Development, Appellants,**

v.

**KIDDER, PEABODY & CO., INC., Appellee.**

**No. B14–92–01091–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 1994.

Rehearing Denied June 23, 1994.

James A. Dunn, Houston, for appellants.

Karl S. Stern, David Lee Crawford, Douglas M. Selwyn, James E. Bradley, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Regency Financial Corporation and Westlake Development appeal from the trial court's order granting summary judgment in favor of appellee, Kidder, Peabody & Co., Inc. Appellants raise five points of error. Because we find that Kidder Peabody failed to meet its summary judgment burden of proof, we reverse the judgment of the trial court.

This dispute arises from Kidder Peabody's disbursement of funds from an account to an attorney, Michael Stewart, on behalf of Old Faithful Investments, N.V. The account at Kidder Peabody was opened in May 1986 by Dorothy Crane and styled:

Westlake Development

Old Faithful Investments

Attn.: Dorothy Crane

2401 Fountainview, Suite 830

Houston, TX. 77057

Westlake Development is an assumed name for Regency Financial Corporation. Crane was authorized to open the account by a general power of attorney from Old Faithful, dated May 5, 1982, and by a Regency Financial corporate resolution, dated May 28, 1982 describing Crane's authority and position as Secretary of the corporation. Crane used Regency Financial's tax I.D. number to open the account.

Into this account, Crane deposited a check from Commonwealth Land Title Insurance Company for $837,611.41. The payees on

this check were "Kidder Peabody—Westlake 129—Old Faithful Investments, N.V." The transactions leading to the payment of this check are numerous. Appellants contend they transferred a 120 acre tract to Westlake Investments, N.V. and appellants took a promissory note. Westlake Investments apparently then transferred the property to Westlake 129. Westlake 129 sold the property in May 1985 to Harold Sellers, Trustee, taking notes in payment. Westlake 129 later transferred its interest in these notes to Solid Rock Investments, B.V. Westlake 129 dissolved following the transfer. Solid Rock Investments subsequently transferred its interest in these notes to Old Faithful. Appellants contend that they have an interest in the proceeds of the check deposited into the Kidder Peabody account as a result of the note appellants received for the sale of the tract to Westlake Investments. The Commonwealth check, which was deposited into the Kidder Peabody account, was to pay off the Westlake 129 lien which had been assumed by Old Faithful. The only endorsement on the Commonwealth check was "FOR DEPOSIT ONLY KIDDER PEABODY & CO. INC."

Old Faithful later sent Kidder Peabody a corporate resolution revoking Crane's general powers of attorney and giving general powers of attorney to Michael Stewart. Stewart sent a letter to Kidder Peabody formally demanding that Kidder Peabody not make any distributions from the account. A Kidder Peabody employee notified Regency Financial of this demand. Stewart subsequently wrote to Kidder Peabody attaching a corporate resolution from Old Faithful deeming it to be in the best interest of Old Faithful that Stewart withdraw the funds in the account and directing Kidder Peabody to release the funds to Stewart. On July 2, 1986, Kidder Peabody issued a check to the order of Michael Stewart, Trustee for $800,282.03.

Appellants Regency Financial and Westlake Development filed suit alleging that Kidder Peabody's actions in handling the account and in releasing the funds to Stewart constituted negligence, breach of contract, breach of implied contract, conversion, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. Appellants also named as defendants Old Faithful Investments, Michael Stewart, Old Faithful's predecessor entities, and others. In its first amended answer and cross-claim, Kidder Peabody brought claims of restitution and fraud against Old Faithful and Michael Stewart. Michael Stewart also filed a cross-claim against Kidder Peabody.

Kidder Peabody and Michael Stewart moved for summary judgment and the trial court entered an interlocutory order granting these motions. Appellants later settled with the other defendants and the trial court entered an Agreed Order of Dismissal with Prejudice. In this agreed order, the trial court dismissed with prejudice appellants' claims against all the defendants other than Kidder Peabody. The trial court also dismissed with prejudice all counterclaims against appellants by six defendants, not including Kidder Peabody. The trial court expressly ordered that the dismissal with prejudice did not apply to appellants' claims against Kidder Peabody or to Kidder Peabody's counterclaims or cross-claims. Kidder Peabody's cross-actions are still pending as they are conditioned on recovery by appellants.

■ In points of error one through five, appellants challenge the trial court's grant of summary judgment claiming there are material fact questions. In particular, appellants contend there are fact questions whether the account was a joint account, and as to Kidder Peabody's negligence in handling the account and in following its customer's instructions. The standard for review of a summary judgment is whether the movant negated the existence of any issues of material fact and established its entitlement to judgment as a matter of law. See *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether a fact issue exists precluding summary judgment, we must take as true all proof favorable to the non-movant, indulging all reasonable inferences and resolving all doubts in the non-movant's favor. *Id.* at 548–49.

■ In its motion for summary judgment, Kidder Peabody reduced appellant's claims to one proposition: "Each of plaintiffs' pur-

ported causes of action in this case is premised on the assertion that Regency owned the money in the account and therefore Kidder Peabody acted wrongfully in disbursing the money in the account to Old Faithful." Kidder Peabody contended in the motion, and reiterates on appeal, that the undisputed proof shows that Old Faithful was the owner of the funds in the account and that Kidder Peabody had no choice but to deposit the funds for the benefit of Old Faithful and to release the funds to Old Faithful upon their instruction. After reviewing the summary judgment proof, we find that Kidder Peabody failed to negate the existence of material fact questions and did not establish its entitlement to judgment as a matter of law.

The parties do not dispute that the Commonwealth check was a negotiable instrument governed by the Texas Uniform Commercial Code ("UCC"). The check was an instrument "payable to order" because it expressly named as payees Kidder Peabody, Westlake 129, and Old Faithful. *See* TEX. BUS. & COM.CODE ANN. § 3.101(a) (Vernon 1968). Although named as a payee, Westlake 129 had dissolved in 1982.

In its motion, Kidder Peabody claimed it was entitled to summary judgment because Old Faithful, a payee on the check, became a holder once the check was deposited into the account. *See* TEX.BUS. & COM.CODE ANN. § 1.201(20) (Vernon 1968) (defines "holder" as "a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank."). Because the check was an instrument payable to order and appellant Regency was not a named payee, Kidder Peabody notes that Regency could only become a holder of the check if the check had been properly negotiated to it. *See* TEX.BUS. & COM.CODE ANN. § 3.202(a) (Vernon 1968). Negotiation occurs only when an endorsement is made and, until then, there is no presumption that the transferee is the owner. TEX.BUS. & COM.CODE ANN. § 3.201(c) (Vernon 1968). "The holder of an instrument whether or not he is the owner may transfer or negotiate it and, ... enforce payment in his

own name." TEX.BUS. & COM.CODE ANN. § 3.301 (Vernon 1968).

We disagree with Kidder Peabody's reasoning. Both Old Faithful and Kidder Peabody were named payees on the check. Old Faithful was a holder of the check while it was in possession of the check payable to its order, but Old Faithful did not endorse the check. Kidder Peabody, another named payee, endorsed the check and paid the proceeds into the joint account of Old Faithful and Regency. Although we agree with Kidder Peabody that Regency did not attain holder status with respect to the check, we nevertheless are not persuaded that this is a material issue. Once Kidder Peabody endorsed the check and deposited the proceeds into the account, the issue is not who was a holder of the check and could recover on it. Instead, the issue is did Kidder Peabody have the authority to disburse proceeds from the joint account to one joint owner of the account. The UCC does not answer this question. Instead, the answer depends upon the contractual arrangement between the bank and the owners of the account, or in this case, the agreement between Kidder Peabody and the joint owners of the account, Old Faithful and Regency.

Regency proposes that, even though it was not a payee or a holder as a result of endorsement, it could still recover and enforce payment if it could account for its possession and prove its right to the instrument. In support of this proposition, Regency cites *First State Bank of Frankston v. Hughes*, 654 S.W.2d 31 (Tex.App.—Tyler 1983, no writ) and *Waters v. Waters*, 498 S.W.2d 236 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

These cases demonstrate how rights in an instrument can be transferred such that a transferee has the right to enforce payment. *See Hughes*, 654 S.W.2d at 33; *Waters*, 498 S.W.2d at 242. The issues in these cases are not on point, however, because they concern a transferee's right to sue on a note or to cash a check for one of two joint payees without an endorsement. *See Hughes*, 654 S.W.2d at 33; *Waters*, 498 S.W.2d at 241–42. Even if Regency were a transferee such that it could have enforced payment by requiring Kidder Peabody to release funds to Regency,

that is not the issue in this case. The issue here is whether Kidder Peabody acted improperly in releasing the funds to Old Faithful after they had been deposited into a joint account. Thus, we find these cases inapplicable.

Appellants attempt to address the primary issue in this case by arguing that the account was set up such that Regency had sole control of the account and had a right to control disbursement of funds. Appellants further assert that Kidder Peabody's actions induced Regency not to take steps to protect its interest in the funds.

Appellants offer the following "facts" in support of their argument: Dorothy Crane had a broad power of attorney from Old Faithful, authorizing her to deposit the check into an account under the sole control of Westlake Development; this power of attorney was so broad that Crane could have endorsed the check over to appellants; the account was opened under the names of Westlake Development and Old Faithful based on the belief that the check could be deposited into an account over which appellants exercised sole or joint control; and, Regency's corporate resolution permitted only Crane to make withdrawals from the account. The summary judgment proof does not support these statements. Although Regency's corporate resolution permitted Crane to open an account and permitted Kidder Peabody to act upon her instructions regarding the delivery of securities or money, these statements do not persuade us that appellants were in sole control of the account. Old Faithful's power of attorney regarding Crane was much broader.

Appellants also note that Regency's tax identification number was used to open the account and that the Kidder Peabody account forms indicate (although this was subsequently crossed out) that the customer was a U.S. citizen. Old Faithful was not a U.S. corporation. Appellants also point out that Kidder Peabody issued a check on this account, upon authorization from appellants, in the amount of $44,039.45 and that this indicates Kidder Peabody's belief that appellants "owned" the account. None of these facts establish any ownership interest in the account by appellants that could prohibit Kidder Peabody from allowing Old Faithful to withdraw funds from the account.

Appellants claim that *Cecil v. Smith,* 821 S.W.2d 375 (Tex.App.—Tyler 1991, no writ) and *Canyon Lake Bank v. New Braunfels Utilities,* 638 S.W.2d 944 (Tex.App.—Austin 1982, no writ) support their claim that they were solely in control of disbursements of funds in the account. We disagree.

In *Cecil,* there was a dispute about the ownership of funds evidenced by a certificate of deposit. 821 S.W.2d at 378. The account was opened in the name of "Martha L. Wisdom or Mr. or Mrs. W.A. Cecil or [the Cecil's daughter]," using Wisdom's social security number. *Id.* IRS forms indicated that interest earned on the account was billed to Wisdom. *Id.* Furthermore, the bank had managed Wisdom's funds for more than twenty years. *Id.* Although the funds in this account were transferred to another certificate of deposit payable only to the Cecils or their daughter, the court found ample evidence to show that account, as well as the funds, actually belonged to Wisdom. *Id.* at 379.

This case is not on point. We do not have a dispute over who owned the funds in an account when one of the original names on the account was deleted. Furthermore, *Cecil* does not involve a dispute between the two parties, whose names are on the account, over the ownership of funds deposited by a check payable to the order of only one party named on the account.

In *Canyon Lake Bank,* an employee of the appellee utility, had fraudulently induced the utility to issue a check to the order of appellant bank. 638 S.W.2d at 945. The employee then took the check to appellant bank and was issued a certificate of deposit in the employee's name as trustee. *Id.* Upon maturity of the certificate, the employee withdrew part of the funds, used it to open a personal checking account, and deposited the remainder in a new certificate of deposit, also payable to the employee as trustee. *Id.* The employee continued this practice of siphoning a portion of the money in the certificate of deposit account into his personal ac-

count until the deposit account was exhausted. *Id.* The employee also applied some of the syphoned funds to pay personal debts and obligations he owed to the bank. *Id.* Appellee utility company sued its employee for conversion and sued the bank for breach of its depository contract with appellee. *Id.* Although the bank argued that it should receive protection afforded by holder in due course status under TEX.BUS. & COM.CODE ANN. § 3.419(c) (Vernon 1968), the appellate court held that this case involved a deposit under the UCC article 4, and not an article 3 negotiable instrument. *Id.* at 946–47. The court ruled the bank was on notice that the certificate was utility property with the employee acting as fiduciary because the certificate was made payable to "Richard Sledge, Trustee." *Id.* at 946. Since the bank knew the deposit by Sledge was held in a fiduciary capacity, the court held that the bank was liable for accepting payment of trust funds from a trustee, such as Sledge, for application to a personal obligation of the trustee. *Id.* at 949.

Appellants argue that *Canyon Lake Bank* is analogous to this case and that therefore, article 4 controls our disposition. We find *Canyon Lake Bank* distinguishable. The account opened in our case was not a trust account opened by a party on behalf of another party who was unaware of the account. Here, Dorothy Crane had authorization from both entities to open a joint account in the names of both entities. Her authority from Regency included acting "upon any orders and instructions with respect to such account" and her authority from Old Faithful included performing any act Old Faithful could perform and to "ask, demand, sue for, recover, collect, ... accounts, [and] deposits ... belonging to principal or in which principal has or may acquire an interest...." Furthermore, in *Canyon Lake Bank,* the trustee had the bank withdraw funds from the trust account and apply those funds to the trustee's personal obligations with the bank. *Id.* at 945. Thus, the bank knew, not only that the account funds were held in trust, but also that the trustee was using these trust funds to pay personal debts. This is entirely different from the fact situation before us.

Appellants also cite *Hinojosa v. Love,* 496 S.W.2d 224 (Tex.Civ.App.—Corpus Christi 1973, no writ) for the proposition that, where there is a joint account, the bank could not disburse funds to one account owner without authorization from the other account owner. Appellants misinterpret *Hinojosa. Hinojosa* involved joint payees on a promissory note. *Id.* at 225–26. The court noted that, under the UCC, an instrument payable to two or more persons could be enforced only by all of them. *Id.* at 226. Because the trial court had granted judgment in favor of Love without joinder of the bank and because proceeding in the absence of an indispensible party is fundamental error, the appellate court reversed and remanded for new trial. *Id.* at 226–27. *Hinojosa* only involves the enforcement of an instrument payable to the order of two persons; it does not involve joint owners of an account.

Appellants assert, however, that the logic regarding joint payees also controls joint accounts and, in support of this assertion, they cite *Leinert v. Sabine Nat'l Bank,* 541 S.W.2d 872 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.). In *Leinert,* a check was made payable to the order of "Sabine National Bank and Jessie M. Hagedorn or Dolores K. Ward." *Id.* at 873. The check was credited to an account in the names of "Sharon J. Lee or Jessie M. Hagedorn." *Id.* at n. 3. The signature card carried the signatures of "Jackie Lee" and Jessie Hagedorn. *Id.* at n. 3. The parties stipulated that "Sharon Lee" and "Jackie Lee" were the same person. *Id.* at 874. The check was accepted with no indorsement by any of the payees. *Id.* at 873. Later, Jackie/Sharon Lee withdrew the funds from that account and placed them in another account bearing the names of "Jackie Lee or Larry Lee." *Id.* at 874. The court explained the distinction between joint accounts styled in the names of "A or B" and those in the names of "A and B." *Id.* Where the account is in the names of "A or B," the court explained that either party may exercise total control over the account and either one may draw a check on the account as if the account were either A's or B's separate account. *Id.* Where the account is in the names of "A and B," funds in the

account are the joint property of A and B and A and B are considered to be joint tenants in the absence of evidence of a contrary intent known to the bank. *Id.* Because the account in *Leinert*, was an "or" account, the court held that the bank was authorized to pay the check drawn by Jackie/Sharon Lee. *Id.* at 875. *See also La Sara Grain v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 562 (Tex.1984) (holding bank liable for paying checks on an unauthorized signature under TEX.BUS. & COM.CODE ANN. § 4.406 where bank paid check drawn from La Sara's account by employee with signature authority despite corporate resolution requiring bank to pay checks only upon the signatures of two of four authorized signatories).

■ *Leinert* is on point and indicates that a bank's liability for payment from a joint account depends upon the account owners' agreement with the bank regarding authorized signatories. Relying upon *Leinert*, appellants argue that Kidder Peabody improperly paid out funds from a joint account without authorization from both Regency/Westlake and Old Faithful. Thus, appellants essentially claim that the Kidder Peabody account was an "and" account, making the funds in the account the joint property of both Westlake and Old Faithful. Our review of the record, however, does not indicate whether this account was an "and" account, requiring the signatures of both parties for payment on a check drawn on the account, or if the account was an "or" account, allowing either party to draw a check on the account. The Regency corporate resolution authorized Dorothy Crane to act on behalf of Regency with respect to the account. The Old Faithful power of attorney also authorized Crane to act on behalf of Old Faithful. Neither of these documents require Kidder Peabody to pay checks only upon the authorization of both parties. Furthermore, there is no signature card in the record. Thus, a fact issue exists as to whether this account was an "and" account, requiring the signature of both parties for payment on this check, or whether this account was an "or" account, requiring signature of one of the joint owners.

■ Kidder Peabody objects to this argument because it claims that appellants did not raise this particular argument in the trial court. Appellants, however, were not the movants for summary judgment. Kidder Peabody, as the movant, had the burden of negating the existence of any material fact issues and to establish its right to judgment as a matter of law. *See Nixon*, 690 S.W.2d 546, 548 (Tex.1985). This Kidder Peabody failed to do. Although Kidder Peabody established that Regency was not a holder of the check and had no rights to enforce payment on the check, it did not establish that, once the proceeds from the check were deposited into the joint account, Kidder Peabody was authorized to release funds from the account to one joint account owner. Because there is no summary judgment proof showing what type of joint account this account was, and this proof is crucial to the determination whether Kidder Peabody improperly paid funds from the account to one party without the other party's authorization, we hold that a fact issue exists as to the type of joint account involved. Consequently, the trial court erred in granting summary judgment in Kidder Peabody's favor. We sustain point of error four. Having sustained this point, we need not address appellants' other points of error.

We reverse the trial court's order granting summary judgment in favor of Kidder Peabody and we remand the cause to the trial court for further proceedings.