**Darrell HODGE, Appellant,**

v.

**NORTHERN TRUST BANK OF TEXAS, N.A., Appellee.**

No. 11–00–00350–CV.

Court of Appeals of Texas, Eastland.

Aug. 16, 2001.

David Kelley II, Loe, Warren, Rosenfield, Kaitcer & Hibbs, Fort Worth, for appellant.

Patricia Lehtola, Lehtola & Associates, Dallas, for appellee.

Panel consists of ARNOT, C.J., WRIGHT and McCALL, JJ.

Opinion

McCALL, Justice.

The principal issue in this summary judgment case is whether Darrell Hodge's claims against Northern Trust Bank of Texas, N.A. (Northern) are barred by limitations. Hodge alleges that in 1983 Northern wrongfully placed funds belonging to him in his mother's account and then seized those funds by applying them against the mother's debts to Northern. We affirm the trial court's summary judgment for Northern.

*Standard of Review*

A trial court must grant a motion for summary judgment if the moving party

establishes that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A trial court properly grants summary judgment for a defendant if he establishes all the elements of an affirmative defense. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). Once the movant establishes his right to a summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the non-movant and indulges every reasonable inference and resolves any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra* at 425; *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

*Summary Judgment Evidence*

In 1980, Hodge's mother, Connie Murray, individually and as Hodge's next friend, settled a lawsuit brought after Hodge received severe electrical burns while playing at his family's apartment complex. The settlement awarded $45,000 to Murray, as Hodge's next friend, for the use and benefit of Hodge. The agreed judgment entered in the case ordered that the money be placed into interest-bearing time deposits and that Murray obtain a court order before she made any withdrawals. In 1983, Murray obtained a court order allowing her to transfer the money to the predecessor in interest of Northern.[1] The transfer order stated, in pertinent part:

It is further ORDERED that the cashier's check or other order representing the transfer of such funds shall bear the notation: "For account of Connie Murray, Individually and as Next Friend of Darrell Hodge, subject to restrictions and final judgment in Cause No. 79 CI 4822, 131st Judicial District Court, Bexar County, Texas."

It is further ORDERED that upon receipt of such funds, [Northern] shall create one or more interest bearing accounts for Connie Murray, as Next Friend of Darrell Hodge, each account to be restricted so as to prevent any withdrawal of funds, except as expressly authorized by Order of this Court.

Northern issued a certificate of deposit (CD) to "Connie Murray as next Best Friend to Darrell Hodge" on April 26, 1983. The CD bore a maturity date of October 25, 1983. On October 25, 1983, Northern credited the individual account of Murray with the proceeds from the CD and then debited her account for the payment of several notes, each apparently representing the individual debt of Murray to Northern.

Hodge reached majority on July 30, 1987. He did not make a demand on Northern for payment of the CD until March 12, 1999. Hodge filed his lawsuit on January 11, 2000. Northern contended in the trial court, and contends here, that Hodge's only viable cause of action is for conversion and that his suit is barred by the two-year statute of limitations set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp.2001). The trial court agreed with Northern and granted summary judgment against Hodge

---

1. We shall refer to Northern's predecessor in interest as "Northern" for purposes of simplicity.

on the grounds of limitations. Hodge argues that the discovery rule applies to toll the running of limitations on his conversion claim. Hodge also argues that he can assert causes of action for breach of depository contract and to enforce payment of the CD because those causes of action do not accrue and limitations do not begin to run until demand for payment is made. See TEX. BUS. & COM. CODE ANN. § 3.118(e) (Vernon Supp.2001); see also TEX. FIN. CODE ANN. § 34.301(b) (Vernon Supp.2001).

*General Deposits versus Special Deposits*

■■■ Texas law divides bank deposits into "general deposits" and "special deposits." See *Bandy v. First State Bank, Overton, Texas*, 835 S.W.2d 609, 618–19 (Tex.1992); *Hudnall v. Tyler Bank and Trust Company*, 458 S.W.2d 183, 186 (Tex. 1970). Ordinarily, a general deposit of money with a bank creates a creditor-debtor relationship between the depositor and the bank. Title to the money passes to the bank, subject to the depositor's demand for payment. *Bandy v. First State Bank, Overton, Texas, supra* at 618–19, n. 4; *Mesquite State Bank v. Professional Investment Corporation*, 488 S.W.2d 73, 75 (Tex.1972); *City Nat. Bank of Bryan v. Gustavus*, 130 Tex. 83, 106 S.W.2d 262 (1937). A "special deposit" creates a bail-or-bailee relationship whereby the bank keeps or transmits identical property or funds entrusted to it. The bank receives no title to money deposited for a special purpose but instead becomes responsible for the safekeeping, return, or disbursement of the money in question. See *Citizens National Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex.1974). A CD can be either a general or a special deposit, depending on the agreement between the bank and the depositor. *Texas Bank and Trust Co. v. Spur Security Bank*, 705 S.W.2d 349, 352 (Tex.App.—Amarillo 1986,

no writ). It is clear from the court order that the CD in this case was a special deposit.

■■■ The designation of a deposit has great significance in an attempted action for conversion. Because a general deposit becomes the property of the bank, the depositor has no action for conversion when the bank wrongfully pays out the deposit. A special deposit, on the other hand, remains the property of the depositor and is subject to an action for conversion. *Houston National Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). There is an exception to the rule for general deposits when the bank has knowledge that a general deposit is held by the depositor in trust for a third party. In that case, the bank may not offset the trust funds against the depositor's individual debt, and the bank becomes liable for conversion if it does so. See *National Indemnity Company v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528, 529 (1961). Hodge, in his first amended petition, pleaded that:

> The certificate of deposit ... clearly stated on its face that the account was opened by "Connie Murray as Next Best Friend to Darrell Hodge."... This notation clearly put [Northern] on notice that it was accepting this deposit for a special purpose, the trust character of these funds, that it was assuming certain fiduciary responsibilities, and/or that Plaintiff was the true owner of these funds.

Northern contends that Hodge is estopped from contending that the CD represented anything but a special deposit and that Hodge's real claim is for conversion which is barred by limitations.

■■■ A plaintiff may not recast his claim in the language of another cause of action

to avoid limitations or compliance with mandatory statutes or to circumvent existing case law contrary to the plaintiff's position. See *Earle v. Ratliff*, 998 S.W.2d 882, 893 (Tex.1999)(essence of plaintiff's claim was that defendant was negligent by not conforming to the applicable standard of care despite labeling claims as DTPA causes of action); *In re Kimball Hill Homes Texas, Inc.*, 969 S.W.2d 522, 526 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding)(nature of claim controls and plaintiff cannot, by artful pleading, recast claim to avoid adverse effect of statute); *Martz v. Weyerhaeuser Company*, 965 S.W.2d 584, 589 (Tex.App.—Eastland 1998, no pet'n). Despite his contentions, Hodge's underlying claim is for conversion.

*Conversion*

■ In its motion for summary judgment, Northern asserted that Hodge's claim was for conversion and that Hodge's claim was barred by the two-year prescription period set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp.2001). Conversion occurs when one person makes an unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). A cause of action for conversion, if it did occur,[2] accrued in 1983. Because Hodge was a minor at that time, limitations did not begin to run until July 30, 1987, when he reached majority. TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(b) (Vernon Supp.2001). The dis-

covery rule could further delay limitations, if it applies.

■ Hodge argues that the discovery rule applies to his conversion claim. The discovery rule delays the running of limitations in cases in which the injury involved is inherently undiscoverable. *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 886 (Tex.1998). Hodge pleaded a cause of action for breach of fiduciary duty. Injuries from a breach of fiduciary duty are presumed to be inherently undiscoverable. *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1994). A plaintiff, nevertheless, must be diligent in protecting his rights. At trial, Hodge would have the burden on the discovery rule issues; the presumption aids him in carrying that burden. By filing a motion for summary judgment under Rule 166a(c), Northern assumed that burden and had to conclusively negate the discovery rule by establishing that Hodge knew, or should have known with the exercise of reasonable diligence, of the alleged conversion. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

■ Northern introduced a 1992 report of the Dallas County Adult Probation Department which stated that:

> The defendant [Hodge] mentioned he has had a large trust fund since he was ten years old after he was burned in an electrocution accident. He said his mother initially received the monthly payments but that he took them over when he was eighteen years old.

Thus, Hodge knew of the fund in 1992. Hodge sought to create a fact issue re-

**2.** This case is before us solely on the issue of Northern's limitations defense. Limitations, unlike other defenses, do not reach the merits of a cause of action, they merely challenge the availability of a remedy. *Russell v. Ingersoll–Rand Company*, 841 S.W.2d 343, 359 (Tex. 1992); *Robinson v. Weaver*, 550 S.W.2d 18, 20

(Tex.1977). Thus, we do not decide whether Northern properly or improperly placed the proceeds from the CD into Murray's account or properly used them to offset her personal debt. Questions regarding whether Northern made proper payment of the CD are part of Hodge's claims or Northern's defenses.

garding his knowledge through an affidavit, but his affidavit contains mere conclusions or beliefs which are insufficient to raise an issue of fact. See *Texas Division—Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex.1994); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

■■■ Hodge also had constructive notice of the court records concerning his 1980 lawsuit. Those records include the agreed judgment establishing the fund, as well as the court's transfer order quoted above. A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. See *HECI Exploration Company v. Neel, supra* at 887; *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex.1981); *"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934, 939 (Tex. 1972).

Limitations began to run on July 30, 1987, when Hodge reached majority and expired two years later. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The trial court properly granted summary judgment on Northern's limitations defense to Hodge's conversion claims.[3]

### Hodge's Remaining Claims

Hodge's principal contention is that his causes of action for breach of depository contract and to enforce payment of a certificate of deposit are not barred because these causes of action did not begin to accrue until he made a demand on Northern in 1999. These claims are simply an effort by Hodge to avoid his limitations problem.

■■■ In support of his breach of depository contract claim, Hodge relies upon *Canyon Lake Bank v. New Braunfels*

*Utilities,* 638 S.W.2d 944, 949 (Tex.App.—Austin 1982, no writ). The only claim against the bank in *Canyon Lake Bank* was for breach of depository contract. Hodge directs our attention to the following language by the court in *Canyon Lake Bank:*

Having concluded the trial court correctly interpreted suit to be for the breach of a depository contract, it necessarily follows the four-year statute of limitations of TEX.REV.CIV.STAT. ANN. arts. 342–701 (1973) and 5527 (1981) applies. Where a deposit of money is made, the statute of limitations is four years and does not begin to run against the depositor until demand is made and refused or an adverse claim is asserted. *Hinds v. Southwestern Savings Association,* 562 S.W.2d 4 (Tex.Civ. App.—Beaumont 1977, writ ref'd n.r.e.).

*Hinds* involved a general deposit, not a special deposit. Article 342–701 was a predecessor to TEX. FIN. CODE ANN. § 34.301(b). By its terms, Section 34.301(b) does not apply to the CD in this case because Section 34.301(b) is limited to a "deposit contract without a maturity date." Section 34.301(b) would appear to apply to the ordinary general deposit that has no maturity date, such as a checking account. Article 5527 was a predecessor to TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon Supp.2001) which includes suits for a debt and which would include the ordinary general deposit. As mentioned earlier, general deposits may be held in trust by the depositor for a third party. *Canyon Lake Bank* involved trustee accounts that the court considered to be general deposits. See *Upper Valley Aviation, Inc. v. Mercantile National Bank,* 656 S.W.2d 952 (Tex.App.—Dallas 1983,

---

**3.** Hodge's claim of breach of fiduciary duty is for conversion by the fiduciary. Even if TEX. CIV. PRAC. & REM. CODE ANN.

§ 16.004(a)(5) (Vernon Supp.2001) applied, the four-year period expired long before Hodge filed this suit.

writ ref'd n.r.e.), another general deposit case, which cites *Canyon Lake Bank* for the proposition that an action for breach of depository contract (an action based on debt) is appropriate where the deposit is a general deposit. *Upper Valley Aviation, Inc. v. Mercantile National Bank*, supra at 955.

▆▆▆ Hodge's argument supporting his claim to enforce payment of a certificate of deposit is more involved. Hodge pleaded that Northern cashed the CD in 1983; that, by cashing the CD, Northern "acquired possession of the certificate of deposit and [Hodge] was unable to present the certificate to [Northern] for payment"; that Hodge demanded payment on March 12, 1999; and that Northern refused to comply with his demand in violation of TEX. BUS. & COM. CODE ANN. Chapters 3 and 4 (Vernon 1994 & Supp.2001). On appeal, Hodge bases his argument on Chapter 3, and he does not refer to Chapter 4.

▆▆▆ Hodge claims that Northern never "paid" the CD because any payment by Northern was in violation of TEX. BUS. & COM. CODE § 3.602. Based on this premise, Hodge argues that TEX. BUS. & COM. CODE ANN. § 3.118 is the statutory provision most directly applicable to this case. Section 3.118(e) provides:

An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

As the State Bar Committee Comments following Section 3.118 note, Chapter 3 only applies to negotiable instruments.[4] TEX. BUS. & COM. CODE ANN. § 3.104(a) requires an unconditional promise or order[5] to pay money "to bearer or to order" before an instrument can be a negotiable instrument; here the CD was payable to "Connie Murray as next Best Friend to Darrell Hodge." Any withdrawal of funds from the account had to be expressly authorized by court order. The CD in this case was a special deposit; it was not a negotiable instrument. Therefore, Sections 3.602 and 3.118(e) are not applicable. Hodge pleaded that the transfer order set forth restrictions on this deposit and that withdrawals were subject to approval by court order. While pleadings do not constitute summary judgment evidence, a party may plead itself out of court by pleading facts that bar a claim. See *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974); *Martz v. Weyerhaeuser Company*, supra at 588.

▆▆▆ Hodge fails to note the distinction between a general account and a special account and the legal consequences flowing from that categorization. A CD can be either a general or a special deposit. *Texas Bank and Trust Co. v. Spur Security Bank*, supra at 352. The cases relied upon by Hodge deal with general deposits and are not applicable. When a bank makes a "wrongful payment" from a

---

4. The Uniform Commercial Code Comment following Section 3.118 points out that:

The only purpose of Section 3–118 is to define the time within which an action to enforce an obligation, duty, or right *arising under Article 3* must be commenced. (Emphasis added)

5. "Order" means a written instruction to pay money signed by the person giving the instruction. TEX. BUS. & COM. CODE ANN. § 3.103(6). If payable to order, a negotiable instrument must be payable to order at the time it is issued or first comes into possession of a holder. Section 3.104(a)(1).

general deposit, there is no violation of the deposit agreement because the bank has title to the funds. The general depositor is simply a creditor of the bank. It is when the bank refuses a demand for payment of the general deposit that the bank breaches its relationship with the depositor. Unlike a general deposit, the special deposit keeps title in the depositor, and the bank is subject to a specific set of instructions for payment. When the bank wrongfully pays a special deposit, the wrong has occurred at that point.

### This Court's Ruling

The summary judgment of the trial court is affirmed.