

# NUMBER 13-13-00004-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BANK OF AMERICA, N.A.,                                                      Appellant,

v.

DWIGHT EISENHAUER, INDIVIDUALLY AND
AS INDEPENDENT EXECUTOR OF THE ESTATE
OF LORENE BELCHER WALTER, DECEASED,                        Appellee.

## On appeal from the County Court at Law No. 1
## of Nueces County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Rodriguez and Garza
## Memorandum Opinion by Justice Rodriguez

This is a breach of contract case.   By five issues, appellant Bank of America, N.A.,

contends:   (1) the trial court erred by rendering judgment notwithstanding the verdict for

appellee Dwight Eisenhauer, as executor of the estate of Lorene Belcher Walter, deceased (Eisenhauer), and awarding him damages; (2) the trial court erred by awarding Eisenhauer his attorney's fees; (3) the jury's finding that Bank of America's failure to comply with the Deposit Agreement[1] was not excused was against the great weight and preponderance of the evidence; (4) the trial court erred by refusing to submit a jury question on ratification; and (5) the jury's finding that Eisenhauer did not fail to comply with the Deposit Agreement was against the great weight and preponderance of the evidence.   We affirm.

## I.   BACKGROUND

Relevant facts, as set out in *Bank of America, N.A. v. Dwight Eisenhauer*, follow:

In June 2003, Lorene and her husband, H.W., renewed a certificate of deposit (the Walter CD) account at Bank of America.   The certificate was titled "H. W. Walter and Lorene Walter ITF Jo Ann Day and Dwight Eisenhauer."[2]   H.W. died in June 2004.   Lorene, as co-owner of the Walter CD and the surviving spouse, became the sole owner of the [Deposit Agreement].   Upon the death of Lorene, any remaining sums were to be paid in equal shares to Day and [Dwight] Eisenhauer.

On July 16, 2004, Day, a long-time employee of [Dwight] Eisenhauer and co-executor with [Dwight] Eisenhauer of H.W.'s estate, presented H.W.'s death certificate to Bank of America.   Day requested that Bank of America's employee, Joyce Sheen, distribute funds from the [Deposit Agreement] to Day and [Dwight] Eisenhauer even though Lorene was still alive.   Sheen complied with Day's request and issued a cashier's check in the amount of $27,497.67 to Day.   A second cashier's check in an equal amount was issued and mailed to [Dwight] Eisenhauer.   At Day's request, Sheen closed the [Deposit Agreement].   Bank of America acknowledges that it made an error when it distributed these funds to [Dwight] Eisenhauer and Day.   [Dwight] Eisenhauer returned the check issued to him and, pursuant to his power of attorney, opened a new account in Lorene's name

---

[1] We also refer to the Deposit Agreement as the Account or the Walter CD.

[2] According to Bank of America's Deposit Agreement and Disclosures Brochure, the account designation ITF (in-trust-for) could be used interchangeably with POD (payable on death).

2

with himself as the only beneficiary. [Dwight] Eisenhauer deposited his check into that account.

On August 27, 2004, Beverly Wynone Belcher Ringland was appointed temporary guardian of the person and the estate of Lorene, and her appointment was continued and confirmed on October 22, 2004. On or about February 2, 2005, Ringland delivered a document to Bank of America, which recited the following: (1) the Walter CD designated Day and [Dwight] Eisenhauer as payable-on-death beneficiaries; (2) H.W. died on June 20, 2004; (3) Bank of America mistakenly permitted Day to withdraw funds from the Walter CD account and distributed, in error, the proceeds in equal shares to Day and [Dwight] Eisenhauer; (4) [Dwight] Eisenhauer returned his distribution to Bank of America; (5) Day retained her distribution despite Bank of America's demands; (5) Ringland was appointed guardian of the person and estate of Lorene; and (6) "Ringland, in her fiduciary capacity as guardian for [Lorene], desires that Day retain the funds received by her and that [Bank of America] withdraw its demand on Day to return funds to the Account." In addition to the above recitals, the Ringland document contained the following paragraph titled "Agreement":

> Therefore, in consideration of forbearance from recovery efforts by the Bank against Day, Ringland, in her fiduciary capacity as guardian for Walter, agrees to indemnify, defend, protect, and hold Bank of America harmless from and against any and all claims, demands, losses, costs, expenses, obligations, liabilities, and damages, including reasonable attorney's fees and costs, that Bank of America may incur or suffer in connection with or resulting from the Withdrawal.

Following receipt of this document, Bank of America returned the $5,000 check to Day's attorney and took no further actions to collect the money from Day.

On March 7, 2005, [Dwight] Eisenhauer replaced Ringland as court-appointed guardian for Lorene's person and estate. Lorene died on May 2, 2005, and on May 25, 2005, [Dwight] Eisenhauer became independent executor of Lorene's estate. Eisenhauer[, in his individual capacity and as executor of Lorene's estate], filed suit against Bank of America on September 13, 2005, asserting claims for breach of contract, violation of state [probate] law, negligence, gross negligence, and breach of fiduciary duty; Eisenhauer requested actual damages, punitive damages, and attorney's fees. In his petition, Eisenhauer alleged that one of the assets of Lorene's estate "was a cause of action against Bank of America for wrongfully, illegally and negligently closing the Walter CD . . . and wrongfully

3

and illegally paying one-half of such funds to a third party not entitled to such funds.

No. 13-09-00004-CV, 2010 WL 2784031, at *1–2 (Tex. App.—Corpus Christi July 15, 2010, no pet.) (mem. op.) (footnotes omitted). "Each party filed a motion for traditional and no-evidence summary judgment. The trial court granted Eisenhauer's motion and denied Bank of America's motion." *Id.* at *1. A jury awarded Eisenhauer attorney's fees. *Id.* at *1. Following Bank of America's appeal of the summary judgments entered in favor of Eisenhauer and the award of attorney's fees, this Court reversed and rendered judgment in favor of Bank of America on all of Eisenhauer's claims in his individual capacity and on his negligence, gross negligence, and breach of fiduciary duty claims in his executor capacity. *See id.* at *9–10. We reversed and remanded the trial court's summary judgment awarding Eisenhauer, as independent executor of Mrs. Walter's estate, damages for breach of contract. *Id.* at *10. We also reversed and remanded the award of attorney's fees and court costs. *Id.* at *10.

On remand, Eisenhauer, as independent executor of Mrs. Walter's estate, tried the sole remaining claim, breach of contract, to a jury. The jury found that Bank of America failed to comply with the Deposit Agreement and that its actions were not excused. The jury also found that zero damages "would fairly and reasonably compensate the Estate of Lorene Belcher Walter for its damages, if any, that resulted from [Bank of America]'s failure to comply." The jury awarded $47,340 to Eisenhauer's attorneys for preparation and trial.

Eisenhauer filed a motion for judgment notwithstanding the verdict, contending that there was no evidence to support the jury's zero damage finding and that the evidence

4

conclusively established $27,497.67 in damages. The trial court granted Eisenhauer's motion and rendered judgment for Eisenhauer in the amount of $84,251.47. That amount included actual damages of $27,497.67, prejudgment interest of $9,413.80, and attorney's fees of $47,340.00. Bank of America appealed from this judgment.

## II. JURY FINDINGS

We begin our review by addressing the following jury findings: (1) Bank of America failed to comply with the Deposit Agreement (Question 1A); (2) Bank of America's failure to comply was not excused (Question 1B), and (3) Mrs. Walter and Eisenhauer did not fail to comply with the Deposit Agreement (Question 1C).

### A. Bank of America's Failure to Comply

First, the jury found that Bank of America failed to comply with the Deposit Agreement. Bank of America did not challenge this finding in the trial court. On appeal, Bank of America acknowledges that it "incorrectly issued two cashier's checks contrary to its agreement with Mrs. Walter," remaining "indebted to Mrs. Walter for the correct Account balance." It concedes that it "has never disputed its payments [made before Mrs. Walter's death] were premature and, therefore, inconsistent with the terms of Mrs. Walter's Deposit Agreement." And during oral argument, Bank of America again informed this Court that it never contested the jury's finding that Bank of America failed to comply with the agreement it had with the decedent. In other words, Bank of America does not dispute the jury's finding that it failed to comply with the Deposit Agreement.

### B. Bank of America's Failure to Comply Was Not Excused and Mrs. Walter and Eisenhauer Complied With the Deposit Agreement

The jury also found that Bank of America's failure to comply with the Deposit

5

Agreement was not excused (Question 1B) and that neither Mrs. Walter nor Eisenhauer failed to comply with the Deposit Agreement (Question 1C). By its third and fifth issues, Bank of America challenges these jury findings, contending that these findings are against the great weight and preponderance of the evidence. Relevant as to the jury's response to question 1B, Bank of America argues, "Bank of America pled and conclusively proved that the account holder accepted a different performance as full satisfaction of the original obligation." As to the jury's response to question 1C, the Bank asserts that the "plaintiff failed to come forward with evidence that she complied with the contractual condition precedent of providing timely written notice of the unauthorized transaction." By this language, Bank of America is bringing factual-sufficiency issues. Yet Bank of America did not file a motion for new trial addressing these jury findings. The filing of such a motion is a prerequisite for bringing a factual sufficiency challenge on appeal. TEX. R. CIV. P. 324(b)(2) & (3). Because Bank of America did not file a motion for new trial, it has not preserved these complaints for our review. *See id.*; *Roberson v. Collins*, 221 S.W.3d 239, 242 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding that because Roberson did not file a motion for new trial, he waived his factual sufficiency issues); *see also In re T.N.C.*, No. 13-11-00305-CV, 2011 WL 5282679, at *12 (Tex. App.—Corpus Christi Nov. 3, 2011, no pet.) (mem. op.) (same). In addition, the legal-sufficiency challenges Bank of America raises in its reply brief are not preserved because Bank of America did not challenge these issues in the trial court by way of (1) a motion for instructed verdict, (2) an objection to the submission of a jury question, (3) a motion for judgment notwithstanding the verdict, (4) a motion to disregard the jury's answer to a vital

6

fact question, or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991). We overrule Bank of America's third and fifth issues.

## II. BANK OF AMERICA'S PROPOSED CHARGE QUESTION ON RATIFICATION

In its fourth issue, Bank of America asserts that the trial court abused its discretion when it refused to submit its tendered jury question on ratification and that this error caused it to suffer harm.

### A. Applicable Law and Standard of Review

When a properly requested question is raised by the pleadings and evidence and is necessary to enable the jury to render a proper verdict, the trial court must submit the question. *Id.*; *see* TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *Halmos v. Bombardier Aerospace Corp.* 314 S.W.3d 606, 617 (Tex. App.—Dallas 2010, no pet.). "We review the trial court's decision to submit [or refuse to submit] a particular question for an abuse of discretion." *See Park N. Serv. Ctr., L.P. v. Applied Circuit Tech., Inc.,* 338 S.W.3d 719, 721 (Tex. App.—Dallas 2011, no pet.).

### B. Discussion

Bank of America pleaded ratification as an affirmative defense in its third amended answer. *See Land Title Co. of Dallas, Inc. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980) (defining "ratification" as "a plea in avoidance and thus an affirmative defense"); *see also* TEX. R. CIV. P. 94; *Martinez v. Castaneda*, No. 13-08-00664-CV, 2010 WL 2891582, at *5 (Tex. App.—Corpus Christi July 22, 2010, no pet.) (mem. op.). Bank of America contends that it "put on evidence that [Ringland] instructed Bank of America to cease efforts to recover the premature distribution." In support of its contention, Bank

7

of America provides this Court with the record citation for defense exhibit 2, the "Indemnity Agreement" signed by Ringland.

Bank of America tendered the following jury question and definition/instruction on ratification:

> Did Lorene Belcher Walter or her representative ratify Bank of America's payment to Jo Ann Day?
>
> ANSWER "Yes" or "No"
> Answer: _____
>
> ### Definition/Instruction
>
> Ratification occurs when the Plaintiff, after learning all the material facts, confirms or adopts an earlier act that did not then legally bind it and that it could have repudiated. *See City of The Colony*, 272 S.W.3d at 732.
>
> Ratification may be express or implied.
>
> Implied ratification occurs if a party, though he may have bee[n] unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefit of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction. PJC 101.5

The trial court denied submission of this question and definition/instruction. However, the trial court allowed Bank of America to argue its defensive theory of excuse and submitted Question 1B, "Was BOA's failure to comply excused?" with the following instructions:

> A failure to comply is excused if a different performance was accepted by the account holder as full satisfaction of performance of the original obligations of the agreement.
>
> A failure to comply by BOA is also excused if, the following circumstances occurred:

8

Plaintiff

a. By words or conduct made a false representation or concealed material facts, and

b. With knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts, and

c. With the intention that BOA would rely on the false representation or concealment in acting or deciding not to act; and

BOA

a. did not know and had no means of knowing the real facts and

b. relied to its detriment on the false representation or concealment of material facts.

Rejecting Bank of America's excuse defense, the jury answered, "No."

Bank of America recognizes that, in this case, ratification relates to the legal concept of excuse. The trial court presented the defensive theory of excuse to the jury in Question 1B. And the evidence regarding Ringland's actions and the indemnity agreement upon which Bank of America relies for its ratification defense relates to "performance" as set out in the instructions provided in Question 1B. That evidence was before the jury, and it chose to disregard it. We conclude that the trial court did not abuse its discretion when it refused to submit a ratification question because it was not necessary to enable the jury to render a proper verdict. *See Park N. Serv. Ctr.*, 338 S.W.3d at 721; *see also* TEX. R. CIV. P. 278. We overrule this fourth issue.

## III. DAMAGES

By its first issue, Bank of America contends that the trial court erred when it rendered judgment notwithstanding the verdict for Eisenhauer and awarded him damages

because (1) the estate had no interest in the Deposit Agreement at the time suit was filed; (2) the jury's finding of "$0" in contract damages was supported by evidence; and (3) there was no evidence of compensable damage to the estate. Eisenhauer responds that the trial court did not err because: (1) Mrs. Walter made a demand for the money and Bank of America denied that demand during her lifetime; (2) there was no legally probative evidence to support the jury's zero damage finding; and (3) the evidence established damages as a matter of law to Mrs. Walter's estate. We agree with Eisenhauer.

## A. Applicable Law and Standard of Review

A trial court should grant a motion for judgment notwithstanding the verdict when the evidence is conclusive and the movant "is entitled to recover as a matter of law or when a legal principle precludes recovery," *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), or "when the evidence is insufficient to raise a material fact issue." *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g). The trial court may render judgment notwithstanding the verdict if a directed verdict would have been proper and may "disregard any jury finding on a question that has no support in the evidence." TEX. R. CIV. P. 301.

We review a trial court's ruling on a judgment notwithstanding the verdict under a no-evidence standard of review. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). "The standard for reviewing a judgment notwithstanding the verdict, like all other motions rendering judgment as a matter of law, requires a reviewing court to credit evidence favoring the jury verdict if reasonable jurors could, and disregard

10

contrary evidence unless reasonable jurors could not." *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005)). We will affirm the judgment if there is no evidence to support the finding or if evidence establishes the contrary as a matter of law. *B&W Supply*, 305 S.W.3d at 15; *see Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

## B.    Discussion

Bank of America acknowledges that it incorrectly issued two cashier's checks contrary to its general Deposit Agreement with Mrs. Walter. But relying on *FDIC v. Lenk*, Bank of America claims that, although it made premature payments that were inconsistent with the terms of the agreement, it did not breach the Deposit Agreement because there is no evidence that Mrs. Walter demanded return of the money or that Bank of America refused such a demand prior to Mrs. Walter's death. *See* 361 S.W.3d 602, 607 (Tex. 2012) (citing *Hodge v. N. Trust Bank of Tex., N.A.*, 54 S.W.3d 518, 525–26 (Tex. App.— Eastland 2001, pet. denied)) ("While a bank's wrongful payment of a general deposit does not breach the deposit agreement, a bank's refusal to pay such funds to the rightful account holder will."). Bank of America contends that its actual breach occurred only after Mrs. Walter's death when Eisenhauer made the "first and only written demand to Bank of America for $27,498.67" and it refused to honor the demand. *See id.* (citing *Hodge*, 54 S.W.3d at 525–26). Bank of America reasons that because the actual breach occurred after the ownership of the Deposit Agreement had passed to the payable-on-death beneficiaries, the jury's zero answer to the damages question was "factually correct." Bank of America claims that the record conclusively establishes that neither

Mrs. Walter nor Eisenhauer made a demand that Bank of America refused until after Mrs. Walter died; thus, zero damages was established as a matter of law. We disagree.

Assuming that the nature of the Deposit Agreement is a general deposit account, while Bank of America's wrongful payment of that account may not have breached the Deposit Agreement, its refusal to pay such funds to the rightful account holder did. *See id.* at 606–07. It is undisputed that Bank of America gave the money to Day on July 16, 2004. And the following undisputed evidence establishes that on July 22, 2004, before Mrs. Walter's May 5, 2005 death, Eisenhauer asked for its return:

> Q.                    Did you give any direction to the bank as to what you expected to happen with the $27,000 that had been paid to Ms. Day?
>
> A [Eisenhauer].       Yes. On Thursday morning, I went in and talked to Joyce Sheen first for about 15 minutes with the checks and then we went in together to Michael Harrison's office and explained the whole thing to him, and it was—it was pretty traumatic, but we got it all out, and I—and I said, you know, we need to get—you need to get the money—the other half back in because it's all Mrs. Walter's money. It's not—it should not have ever been distributed. And Mr. Harrison's remarks were along the line of no problem. This—it's an error. It's a mistake. We will make Mrs. Walter whole. We will return the money with interest. Don't worry about it.

And as established by the following, Eisenhauer continued to pursue his request for the return of the money:

> Q.                    And did you continue to receive assurances like that in the months to come?
>
> A [Eisenhauer].       In the months to come about seven months worth of months to come, I reasonably regularly stopped in at the bank, talked to Michael, and said, "Okay. What's the deal? What's happened?" And he continually

12

> reassured me that everything was fine that it was under investigation by Ms. Brenda King's department; and as soon as they had it all figured out, they would take care of it. Don't worry about it.

Q. Did—

A. I worried about it.

Importantly, the following testimony further establishes that, in February 2005, again before Mrs. Walter died on May 5, 2005, Bank of America told Eisenhauer that it had denied Mrs. Walter's claim:

> Q. At some point did you determine that the money wasn't going to be paid back without looking to an attorney or doing something else?
>
> A [Eisenhauer]. In the month of February, which is about seven months after this all started, I made a stop by the bank, talked to Mr. Harrison, and I still remember it. Michael came out and he says, "I can't talk to you." I said, "Whoa, whoa, whoa. What's going on?" And he said, "I can't talk to you about this." And I said, "Why?" He said, "Well, they have"—"the powers that be," or something like that—"have determined that they are not going to return the money," and I said, "What do I do now?" I said, "Who do I talk to?" And he, in fact, gave me the name and number of—gosh the paralegal in Phoenix.

This undisputed evidence establishes that Eisenhauer made a demand and that Bank of America refused it prior to Mrs. Walter's death, establishing that Bank of America breached the Deposit Agreement before her death and that Eisenhauer is entitled to recover damages as a matter of law. *See B&W Supply*, 305 S.W.3d at 15. Given the above testimony demonstrating both demand and refusal prior to Mrs. Walter's death, Mrs. Walter's cause of action against Bank of America accrued before her death. *See Lenk*, 261 S.W.3d at 607 (citing *Hodge*, 54 S.W.3d at 525–26) ("[A]s a general matter, a

bank's refusal to pay funds on a customer's demand commences the accrual of a demand-based cause of action."). Mrs. Walter was damaged in the amount of $27,497.67 because that is the undisputed amount that was given to Day when Bank of America failed to comply with the Deposit Agreement. We conclude that the trial court correctly disregarded the jury's zero damage finding that had no support in the evidence. *See* TEX. R. CIV. P. 301. A reasonable juror could not have disregarded this contrary evidence. *See Cent. Ready Mix Concrete Co.*, 228 S.W.3d at 651 (citing *City of Keller,* 168 S.W.3d at 823, 827).

Under our no-evidence standard of review, we conclude that the trial court did not err in granting Eisenhauer's motion for judgment notwithstanding the verdict. *See B&W Supply, Inc.*, 305 S.W.3d at 15; *Tanner*, 289 S.W.3d at 830. We overrule Bank of America's first issue.

## IV. ATTORNEY'S FEES AND PREJUDGMENT INTEREST

By its second issue, Bank of America challenges the trial court's award to Eisenhauer of $47,340 in attorney's fees as found by the jury in response to Question 3. Bank of America argues "[w]ithout proof of damages Eisenhauer is not entitled to recover attorneys' fees." *See Green Int'l v.* Solis, 951 S.W.2d 384, 390 (Tex. 1997) ("To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West, Westlaw through 2013 3d C.S.) (providing that a party "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written

14

contract."). We agree that when a party fails to recover damages on his breach of contract claim, he is not entitled to recover attorney's fees under section 38.001. *See Green Int'l*, 951 S.W.3d at 390. However, in this case, we have concluded that the trial court correctly awarded Eisenhauer $27,497.67 on his breach of contract claim. So with proof of damages Eisenhauer is entitled to his attorney's fees under Chapter 38. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

Bank of America also urges that the jury's finding of $47,340 for attorney's fees is against the great weight and preponderance of the evidence because the contract sued upon included a waiver of attorney's fees. However, Bank of America did not file a motion for new trial, which is a prerequisite for preserving a factual sufficiency issue. *See* TEX. R. CIV. P. 324(b)(2) & (3); *Roberson*, 221 S.W.3d at 242; *see also In re T.N.C.*, 2011 WL 5282679, at *12. Because Bank of America did not preserve this argument for our review, we do not consider it. *See* TEX. R. APP. P. 33.1.

In addition, by a sub-issue, Bank of America challenges the trial court's award of "prejudgment interest on the $27,497.67 at the rate of five percent (5%) simple interest from September 13, 2005, the date this suit was filed, to July 18, 2012." "Prejudgment interest is an appropriate element of damages for a prevailing party." *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 896 (Tex. App.—El Paso 2005, pet. denied). In this case, Bank of America was obligated to pay prejudgment interest on the damages awarded to Eisenhauer—the basis for the trial court's award of prejudgment interest.

On appeal, Bank of America argues that Eisenhauer did not attempt to prove any particular rate of interest or any specific amount of interest, but Eisenhauer is under no

15

burden to prove up a prejudgment interest rate. *See* TEX. FIN. CODE ANN. § 304.003 (West, Westlaw through 2013 3d C.S.) (providing for statutory postjudgment interest); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (explaining that although section 304.003 expressly applies to postjudgment interest rates, prejudgment interest is computed at the same rate set by statute for postjudgment interest). And Bank of America offered no objection in the trial court as to the amount of prejudgment interest awarded or the manner in which the trial court calculated the prejudgment interest. "A complaint regarding the award of pre[]judgment interest must be preserved in the trial court by a motion to amend or correct the judgment or by a motion for new trial." *Morton v. Hung Nguyen*, 369 S.W.3d 659, 677 (Tex. App.—Houston [14th Dist.] 2012), *rev'd in part on other grounds sub nom. Morton v. Nguyen*, 412 S.W.3d 506 (Tex. 2013); *see Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 484 (Tex. App.—Corpus Christi 2008, pet. denied) ("Though a complaint regarding prejudgment interest must typically be preserved in the trial court through either a motion to amend or correct the judgment or by a motion for new trial, we find that the Kloesels have preserved their complaint as a result of the trial court implicitly overruling their proposed prejudgment interest award."). Bank of America failed to object to the trial court regarding the award of prejudgment interest, and such failure waived this issue for appellate review. *See Morton*, 359 S.W.3d at 677; *see also* TEX. R. APP. P. 33.1(a)(1).

Accordingly, we overrule Bank of America's second issue challenging the award of attorney's fees and its sub-issue challenging the award of prejudgment interest.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
15th day of May, 2014.